**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| RUSSELL KANE & CHRISTOPHER MYERS, individually and on behalf of all others similarly situated, | **CLASS ACTION COMPLAINT** |
| | **Case No.:** |
| *Plaintiffs*, | |
| -*against*- | **Jury Demanded** |
| ZOOM VIDEO COMMUNICATIONS, INC.; and, DOES 1-10, | |
| *Defendant*. | |

Russell Kane and Christopher Myers ("Plaintiffs"), individually and on behalf of all others similarly situated, by and through undersigned counsel, allege the following upon information and belief, except for those allegations pertaining to Plaintiffs, which are based on their personal knowledge:

## NATURE OF THE ACTION

1.      In a September 25, 2018, letter to U.S. House of Representative Ted Budd, U.S. Department of Justice Assistant Attorney General Stephen E. Boyd confirmed that public accommodations must make the websites they own, operate, or control equally accessible to individuals with disabilities. Assistant Attorney General Boyd's letter provides:

> The Department [of Justice] first articulated its interpretation that the ADA applies to public accommodations' Websites over 20 years ago. This interpretation is consistent with the ADA's title III requirement that the goods, services, privileges, or activities

provided by places of public accommodation be equally accessible
to people with disabilities.[1]

2.      Plaintiffs Russell Kane and Christopher Myers are hearing-impaired individuals who rely upon auxiliary aids and services, interpreters, and Video Remote Interpreting ("VRI") communication software, to remain as independent as possible. These auxiliary aids and services allow hearing-impaired individuals to participate in and receive the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation.

3.      Defendant Zoom Video Communications, Inc. ("Defendant" or "Zoom") discriminated against Plaintiffs and those similarly situated by imposing a surcharge in order to effectively participate in and benefit from Defendant's services free from discrimination.

4.      The individual Plaintiffs bring this action individually and on behalf of all others similarly situated to compel Defendant to cease unlawful discriminatory practices and implement policies and procedures that will ensure Plaintiffs full and equal enjoyment, and a meaningful opportunity to participate in and benefit from Defendant's services without the surcharge for their disability. Plaintiffs seek declaratory, injunctive, and equitable relief and attorneys' fees and costs to redress Defendant's unlawful discrimination on the basis of disability in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* (the "ADA"), and its implementing regulations.

5.      Plaintiff Christopher Myers also brings this action individually and on behalf of all other similarly situated California residents and seeks declaratory,

---

[1]      *See* Letter from Assistant Attorney General Stephen E. Boyd, U.S. Department of Justice, to Congressman Ted Budd, U.S. House of Representatives (Sept. 25, 2018) (available at https://images.cutimes.com/contrib/content/uploads/documents/413/152136/adaletter.pdf)     (last visited December 16, 2020).

injunctive, and equitable relief, and attorneys' fees and costs to redress Defendant's unlawful discrimination on the basis of disability in violation of California's Unruh Civil Rights Act, California Civil Code § 51 *et seq*. ("Unruh Act"), and for statutory damages, in accordance with California Civil Code § 52(a).

6.    Plaintiff Russell Kane also brings this action individually and on behalf of all other similarly situated New York residents and seeks declaratory, injunctive, and equitable relief, and attorneys' fees and costs to redress Defendant's unlawful discrimination on the basis of disability in violation of    New    York's    Human Rights Laws, N.Y. Exec. Law § 290 *et seq*., and for statutory damages, in accordance with N.Y. Exec. Law § 296.

7.    The individual Plaintiffs have utilized Defendant's video conference and web conferencing services and were denied full and equal access as a result of Defendant's surcharge on the technology required for closed captioning. Without this technology, Plaintiffs' only option to equally use and communicate on Defendant's video conference service is to attempt lip-reading through a video chat.

8.    Lip-reading, or speech reading, is the ability to understand the speech of another by watching the speaker's mouth and face. It is an extremely speculative means of communication and no substitute for closed captioning on a video call. Approximately 40% of the spoken sounds of aural language are visible, and many of those appear identical on the lips.[2] Even the most accomplished lip-readers, in a well-lit room, in a one-to-one situation, have been found to understand

---

[2] *See* Centers for Disease Control and Prevention, *Speech Reading*, https://www.cdc.gov/ncbddd/hearingloss/parentsguide/building/speech-reading.html (Last visited December 17, 2020). *See also* Altieri NA, Pisoni DB, Townsend JT. Some normative data on lip-reading skills, found at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3155585/#:~:text=A%20lip%2Dreading%20recognition%20accuracy,standard%20deviations%20above%20the%20mean.&text=With%20these%20results%2C%20it%20is,to%20a%20normal%2Dhearing%20population (Last visited December 17, 2020).

four to five words in a twelve-word sentence.[3] Absent the purchase of the additional technology, lip-reading is the only way to attempt to participate in Zoom Video Chats.

9.      Defendant requires hearing-impaired individuals to purchase additional technology to participate fully in the services it offers. While Defendant already possesses the technology to support the closed captioning software, the services can cost $200.00 per hour or higher.[4] Defendant permits third-party software companies to integrate a closed captioning service into its software. This is the only tool for Plaintiffs to fully participate in the use of Defendant's services.

10.      By failing to make its services accessible to hearing impaired persons, Defendant, a public accommodation subject to Title III of the ADA and the Unruh Act, deprives deaf and hearing-impaired individuals of the full benefits of Defendant's services—all benefits it affords nondisabled individuals—thereby increasing the sense of isolation and stigma among these Americans that Title III of the ADA, N.Y. Exec. Law § 290 *et seq.* and the Unruh Act were meant to redress.

11.      Defendant's discrimination sends a message that it is acceptable for service providers to adopt policies, procedures, and practices that deprive deaf and hearing-impaired individuals of the opportunity to fully participate in its services.

12.      This discrimination is particularly acute during the current COVID-19 global pandemic. According to the Centers for Disease Control and Prevention ("CDC"), Americans living with disabilities are at higher risk for severe illness from COVID-19 and are therefore recommended to shelter in place throughout the duration of the pandemic.[5] This underscores the importance of access to online

---

[3] *Id.*
[4] https://support.zoom.us/hc/en-us/articles/207279736-Managing-and-viewing-closed-captioning
[5] *See* Centers for Disease Control and Prevention Website, *Coronavirus Disease 2019 (2019), available at* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-

services, such as Defendant's video conferencing platform, for this especially vulnerable population. For many disabled individuals, they are relying on Defendant's video services for contact with friends and family – a service that is free for those who can hear, but requires a surcharge for the hearing-impaired.

13.    The COVID-19 pandemic is particularly dangerous for disabled individuals.[6] The overwhelming burden on hospitals is leading to a concern that the emergency services will ration treatment. Although the U.S. Department of Health and Human Services has issued guidance that no priority treatment will occur, disabled individuals are in fear that their diminished capacity to communicate will affect their treatment.[7] With public health experts expecting social distancing to extend through 2022, and the uncertainty surrounding businesses transitioning back to normal operations, the importance of accessible online services has been heightened. During these unprecedented times, disabled individuals risk losing their jobs, experiencing difficulty acquiring services like health care, and lacking the information they need to stay safe.[8]

---

ncov%2Fspecific-groups%2Fhigh-risk-complications.html (last visited December 4, 2020) ("Based on currently available information and clinical expertise, older adults and people of any age who have serious underlying medical conditions might be at higher risk for severe illness from COVID-19.").

[6]  See The New York Times, *'It's Hit Our Front Door': Homes for the Disabled See a Surge of Covid-19 (2020), available at* https://www.nytimes.com/2020/04/08/nyregion/coronavirus-disabilities-group-homes.html?smid=fb-nytimes&smtyp=cur (last accessed December 4, 2020) ("As of Monday, 1,100 of the 140,000 developmentally disabled people monitored by the state had tested positive for the virus, state officials said. One hundred five had died—a rate far higher than in the general population").

[7] See The Atlantic, *Americans With Disabilities Are Terrified (2020), available at* https://www.theatlantic.com/politics/archive/2020/04/people-disabilities-worry-they-wont-get-treatment/609355/ (last visited December 4, 2020) (explaining that disabled individuals are inherently more susceptible to the virus, leading to complications in hospital in which the individuals are unable to effectively communicate with doctors while intubated).

[8] See Slate, *The Inaccessible Internet 2020, available at* https://slate.com/technology/2020/05/disabled-digital-accessibility-pandemic.html (last visited December 4, 2020).

14.     In contrast to the incredible strain the pandemic has caused the disabled community, Defendant has directly benefited from the pandemic. Defendant rapidly became the number one internet video conferencing software to use while people work and learn from home. This is evidenced by its surge from 10 million daily users prior to the pandemic to an estimated 300 million daily users now.[9] Consistent with this growth, the business itself is seeing unprecedented success, while still requiring hearing-impaired individuals to pay extra for equal access.[10]

15.     Plaintiffs bring this civil rights action against Defendant to enforce Title III of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* ("Title III"), which requires, among other things, that a public accommodation (1) not deny persons with disabilities the benefits of its services, facilities, privileges, and advantages; (2) provide such persons with benefits that are equal to those provided to nondisabled persons; (3) provide auxiliary aids and services where necessary to ensure effective communication with individuals with a hearing disability, and to ensure that such persons are not excluded, denied services, segregated or otherwise treated differently than hearing-abled individuals; and (4) utilize administrative methods, practices, and policies that provide persons with disabilities equal access to online content.

16.     When Defendant provides such auxiliary aids mandated under 42 U.S.C. § 12101, *et seq.*, the ADA directs that such cost shall be borne by the Defendant, and cannot be reimbursed by the disabled individual:

> A public accommodation may not impose a surcharge on a particular individual with a disability or any group of individuals with disabilities to cover the costs of measures, such as the provision of auxiliary aids, barrier removal, alternatives to barrier removal, and reasonable modifications in policies, practices, or

---

[9] https://www.wusa9.com/article/news/nation-world/zoom-boom-during-coronavirus-pandemic/507-96bec5cb-4d11-4ef6-812d-aaffda4650f1
[10] https://www.wsj.com/articles/zooms-pandemic-fueled-boom-continues-11606772231

procedures, that are required to provide that individual or group with the nondiscriminatory treatment required by the Act or this part. 28 C.F.R. § 36.301(c).

17.    Because Defendant's service is not and has never been fully accessible, and because upon information and belief Defendant does not have, and has never had, adequate corporate policies that are reasonably calculated to cause its service to become and remain accessible, Plaintiff invokes 42 U.S.C. § 12188(a)(2) and seeks a permanent injunction requiring Defendant to:

a) Offer the closed captioning service free of any surcharge to all individuals with hearing related disabilities;

b) Retain a qualified consultant acceptable to Plaintiffs ("Accessibility Consultant") who shall assist in improving the accessibility of its service, including all third-party content and plug-ins, so the goods and services on the service may be equally accessed and enjoyed by individuals with hearing related disabilities;

c) Work with the Accessibility Consultant to ensure all employees involved in service and content development be given accessibility training on a biennial basis, including onsite training to create accessible content at the design and development stages;

d) Work with the Accessibility Consultant to perform an automated accessibility audit on a periodic basis to evaluate whether Defendant's service may be equally accessed and enjoyed by individuals with hearing related disabilities on an ongoing basis;

e) Work with the Accessibility Consultant to perform end-user accessibility/usability testing on at least a quarterly basis with said testing to be performed by humans who are hearing disabled, or who have training and experience in the manner in which persons who are deaf use closed captioning to communicate, in addition to the testing, if applicable, that is performed using semi-automated tools;

f) Incorporate all of the Accessibility Consultant's recommendations within sixty (60) days of receiving the recommendations;

g) Work with the Accessibility Consultant to create an Accessibility Policy that will be posted on its service, along with an e-mail address, instant messenger, and toll-free phone number to report accessibility-related problems;

h) Accompany the public policy statement with an accessible means of submitting accessibility questions and problems, including an accessible form to submit feedback or an email address to contact representatives knowledgeable about the Accessibility Policy;

i) Provide a copy of the Accessibility Policy to all web content personnel, contractors responsible for web content, and Client Service Operations call center agents ("CSO Personnel") for the Website;

j) Train no fewer than three of its CSO Personnel to automatically escalate calls from users with disabilities who encounter difficulties using the service. Defendant shall have trained no fewer than 3 of its CSO personnel to timely assist such users with disabilities within CSO published hours of operation. Defendant shall establish procedures for promptly directing requests for assistance to such personnel including notifying the public that customer assistance is available to users with disabilities and describing the process to obtain that assistance;

k) Modify existing bug fix policies, practices, and procedures to include the elimination of bugs that cause the service to be inaccessible to users of closed captioning technology;

l) Plaintiffs, their counsel, and their experts monitor the service for up to two years after the Mutually Agreed Upon Consultant validates the service is free of accessibility violations to ensure Defendant has adopted and implemented adequate accessibility policies. To this end, Plaintiffs, through their counsel and their experts, shall be entitled to consult with the Accessibility Consultant at their discretion, and to review any written material, including but not limited to any recommendations the Accessibility Consultant provides Defendant.

18.    Web-based technologies have features and content that are modified on a daily, and in some instances an hourly, basis. A one-time "fix" to an inaccessible service will not cause the service to remain accessible without a corresponding

change in corporate policies related to those web-based technologies. To evaluate whether an inaccessible service has been rendered accessible, and whether corporate policies related to web-based technologies have been changed in a meaningful manner that will cause the website to remain accessible, the service must be reviewed on a periodic basis using both automated accessibility screening tools and end user testing by disabled individuals.

19.    Plaintiffs' claims for permanent injunctive relief are asserted as a nationwide class claim pursuant to Fed. R. Civ. P. 23(b)(2). Rule 23(b)(2) was specifically intended to be utilized in civil rights cases where the Plaintiffs seek injunctive relief for his or her own benefit and the benefit of a class of similarly situated individuals. To that end, the note to the 1966 amendment to Rule 23 states:

> Subdivision(b)(2).  This subdivision is intended to reach situations where a party has taken action or refused to take action with respect to a class, and final relief of an injunctive nature or a corresponding declaratory nature, settling the legality of the behavior with respect to the class as a whole, is appropriate . . .. Illustrative are various actions in the civil rights field where a party is charged with discriminating unlawfully against a class, usually one whose members are incapable of specific enumeration.

Fed. R. Civ. P. 23(b)(3).

20.    In addition, Plaintiff Myers' claims for statutory damages pursuant to California Civil Code section 52(a) are asserted as a California statewide class claim pursuant to Fed. R. Civ. P. 23(b)(3).

21.    Plaintiff Kane's claims for statutory and compensatory damages pursuant to N.Y. Exec. Law § 296 are also asserted as a New York statewide class claim pursuant to Fed. R. Civ. P. 23(b)(3).

## **PARTIES**

22.     Plaintiff Russell Kane was, at all relevant times hereto, a resident of Freeport, New York. Plaintiff has a hearing impairment that has rendered him with profound deafness in both ears.

23.     As described above, Plaintiff Kane is deaf. While Plaintiff remains as independent as possible, he relies on closed captioning to communicate effectively.

24.     Plaintiff is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(2), and the regulations implementing the ADA set forth at 28 C.F.R. §§ 36.101, *et seq.*, and N.Y. Exec. Law § 296.

25.     Plaintiff Christopher Myers was, at all relevant times hereto, a resident of South Pasadena, California. Plaintiff has a hearing impairment that has rendered him with profound hearing loss in both ears.

26.     As described above, Plaintiff Myers is deaf. While Plaintiff remains as independent as possible, he relies on closed captioning to communicate effectively.

27.     Plaintiff is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(2), and the regulations implementing the ADA set forth at 28 C.F.R. §§ 36.101, *et seq.*, and the Unruh Act, Cal. Civ. Code, § 51 *et seq.*

28.     Defendant Zoom Video Communications, Inc. is, and at all times relevant hereto was, a Delaware Corporation, with its headquarters at 55 Almaden Boulevard, 6th Floor, San Jose, California, 95113. Defendant owns and operates its service throughout the United States. Defendant is "leader in modern enterprise video communications, with an easy, reliable cloud platform for video and audio conferencing, chat, and webinars . . . ." See, "Zoom Homepage" https://zoom.us/ (last visited December 17, 2020).

29.     Defendant's Website and video conferencing service is a place of public accommodation within the definition of Title III of the ADA, 42 U.S.C. § 12181(7).

## HARM TO PLAINTIFFS

30.   Plaintiffs have attempted to access Zoom from their homes in California and New York, respectively. Unfortunately, because of the surcharge for the closed captioning technology, Plaintiffs are unable to access, and thus are denied the benefit of, much of the content and services they wish to access via the service.

31.   This surcharge barrier denies Plaintiffs full and equal access to all of the services Defendant offers, and now deter them from attempting to use the Website. Still, Plaintiffs would like to, and intend to, attempt to access the service in the future. The service is a vital tool in communication in today's climate, particularly during the time of the global COVID-19 pandemic, and as such, Plaintiffs have a need to access the service to fully participate in their work, personal, and educational lives.

32.   As a result of Defendant's failure to ensure effective communications with the individual Plaintiffs, and denial of auxiliary aid and services without a surcharge, the individual Plaintiffs received services that were objectively substandard, inaccessible, and inferior to those provided to hearing-abled users, and were subjected to discriminatory treatment because of their disability.

33.   Though Defendant may have centralized policies regarding the maintenance and operation of the service, Defendant has never had a plan or policy that is reasonably calculated to make the service fully accessible to, and independently usable by, individuals with hearing related disabilities. As a result, the surcharge for closed captioning is permanent in nature and likely to persist.

34.   The law requires that Defendant reasonably accommodates Plaintiffs' disabilities by removing these existing access barriers and provide the service free of surcharge. Removal of the barriers identified above is readily achievable and may be carried out without much difficulty or expense.

35.    Plaintiffs have been, and in the absence of an injunction will continue to be, injured by Defendant's failure to provide its online content and services in a manner that does not require a surcharge for a deaf individual to use.

### JURISDICTION AND VENUE

36.    This Court has federal question jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, 2201 and 42 U.S.C. § 12188. This Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

37.    Plaintiffs' claims asserted herein arose in this judicial district, as Plaintiff Kane resides in this judicial district. Defendant also does substantial business in this judicial district. Specifically, Defendant is registered to do business in California and New York.

38.    Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2). Defendant is subject to personal jurisdiction in this District because Defendant does substantial business in this District, and a substantial part of the events or omissions giving rise to these claims occurred in this District. Defendant engaged in the extensive promotion, marketing, distribution, and sales of the services at issue in this District. Injunctive relief is authorized by Rule 65 of the Federal Rules of Civil Procedure.

### CLASS ASSERTIONS

39.    Plaintiffs Christopher Myers and Russell Kane ("the Individual Plaintiffs") bring this matter on behalf of themselves and those similarly situated.

40.    The Individual Plaintiffs seek certification of the following Nationwide Class: "all legally deaf individuals who have used Zoom in the United States and were denied full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations due to Zoom's surcharge on the closed captioning, and subsequent failure to comply with the ADA's auxiliary aids and services requirements during the Class Period." (The "Nationwide Injunctive Class"). The

Individual Plaintiffs reserve the right to amend or modify the Class definition in connection with a motion for Class certification and/or the result of discovery.

41.     Plaintiff Myers also seeks certification of the following California sub-class: "all legally deaf individuals who have used Zoom in California and were denied full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations due to Zoom's surcharge on the closed captioning, and subsequent failure to comply with the Unruh Act's auxiliary aids and services requirements during the Class Period." Plaintiff Myers reserves the right to amend or modify the sub-Class definition in connection with a motion for Class certification and/or the result of discovery.

42.     The California sub-class seeks class wide damages pursuant to California Civil Code § 52(a) in the amount of $4,000 per violation and, pursuant to California Civil Code § 54.3 in the amount of $1,000 per violation, based on Defendant's wrongful policy and practice of failing to provide full and equal access to hearing impaired Californians as alleged herein. This action does not seek class recovery for actual damages, personal injuries, or emotional distress that may have been caused by Defendant's conduct alleged herein.

43.     Plaintiff Kane also seeks certification of the following New York sub-class: "all legally deaf individuals who have used Zoom in New York and were denied full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations due to Zoom's surcharge on the closed captioning, and subsequent failure to comply with the Unruh Act's auxiliary aids and services requirements during the Class Period." Plaintiff Kane reserves the right to amend or modify the sub-Class definition in connection with a motion for Class certification and/or the result of discovery.

44.     The New York sub-class seeks class wide damages pursuant to New York Exec. Law § 296, based on Defendant's wrongful policy and practice of failing

to provide full and equal access to hearing impaired New Yorkers as alleged herein. This action does not seek class recovery for actual damages, personal injuries, or emotional distress that may have been caused by Defendant's conduct alleged herein.

45.     This action should be certified as a class action under Federal Rule of Civil Procedure 23(a) and (b)(2) for the Nationwide Injunctive Class. It satisfies the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

A.     Numerosity: Class Members are so numerous that joinder of all members is impracticable. Plaintiffs believe that there are tens of thousands of hearing-impaired individuals who are Class Members who have been harmed and suffered discrimination due to Defendant's failure to comply with the ADA's auxiliary aids and services requirements.

B.     Commonality: There is a well-defined community of interest and common questions of fact and law affecting members of the class in that they all have been and/or are denied their civil rights to full and equal access to, and use and enjoyment of, Defendant's facilities and/or services due to Defendant's failure to make its facilities fully accessible and independently usable as described above.

C.     Typicality: The Individual Plaintiffs' claims are typical of the claims of the members of the proposed Nationwide Injunctive Class. The claims of Plaintiffs and members of the class are based on the same legal theories and arise from the same unlawful conduct.

D.     Adequacy: The Individual Plaintiffs are all adequate Class representatives. None of their interests conflict with the interests of the Class Members they seek to represent; Plaintiffs will fairly, adequately, and vigorously represent and protect the interests of the members of the class, all

of whom are similarly situated individuals with hearing impairments, and they have a strong interest in vindicating their own and others civil rights; and, they have retained counsel competent and experienced in complex class action litigation, generally, and who possess specific expertise in the context of class litigation under the ADA and Unruh Act.

46.     Class certification of the Nationwide Injunctive Class is appropriate under Fed. R. Civ. P. 23(b)(2) because Defendant has acted on or refused to act on grounds generally applicable to the Class, making appropriate declaratory, injunctive, and equitable relief with respect to the Individual Plaintiffs and the Class as a whole.

47.     This action should be further certified as a class action under Federal Rule of Civil Procedure 23(a) and (b)(3) for the California Unruh Damages Sub-Class. Plaintiff Myers asserts the California subclass, limited to class members who are, or during the relevant time were, residents of California, satisfies the class action prerequisites of numerosity, commonality, typicality, and adequacy for the same reasons set forth in preceding paragraph. In addition:

A.     <u>Predominance</u>: Pursuant to Rule 23(b)(3), the common issues of law and fact identified above predominate over any other questions affecting only individual members of the California Unruh Damages Sub-Class. The Class issues fully predominate over any individual issue because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendant's provision of services to hearing impaired California residents on its video conferencing platform.

B.     <u>Superiority</u>: A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

i.    The joinder of thousands of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources.

ii.    The individual claims of the Class Members are relatively modest compared with the expense of litigating the claims, thereby making it impracticable, unduly burdensome, and expensive—if not totally impossible—to justify individual actions.

iii.    When Defendant's liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases.

iv.    This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims.

v.    Plaintiffs know of no difficulties to be encountered in the management of this action that would preclude its maintenance as a class action.

vi.    A class action will assure uniformity of decisions among Class Members.

vii.    The Class is readily identifiable from Defendant's own records and prosecution of this action as a class action will eliminate the possibility of repetitious litigation; and,

viii.    Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by single class action.

48.    This action should be further certified as a class action under Federal Rule of Civil Procedure 23(a) and (b)(3) for the New York Damages Sub-Class. Plaintiff Kane asserts the New York subclass, limited to class members who are, or

during the relevant time were, residents of New York, satisfies the class action prerequisites of numerosity, commonality, typicality, and adequacy for the same reasons set forth in preceding paragraph. In addition:

A.      <u>Predominance</u>: Pursuant to Rule 23(b)(3), the common issues of law and fact identified above predominate over any other questions affecting only individual members of the New York Damages Sub-Class. The Class issues fully predominate over any individual issue because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendant's provision of services to hearing impaired New York residents on its video conferencing platform.

B.      <u>Superiority</u>: A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

i.      The joinder of thousands of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources.

ii.      The individual claims of the Class Members are relatively modest compared with the expense of litigating the claims, thereby making it impracticable, unduly burdensome, and expensive—if not totally impossible—to justify individual actions.

iii.      When Defendant's liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases.

iv.      This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims.

v.      Plaintiffs know of no difficulties to be encountered in the management of this action that would preclude its maintenance as a class action.

vi.      A class action will assure uniformity of decisions among Class Members.

vii.      The Class is readily identifiable from Defendant's own records and prosecution of this action as a class action will eliminate the possibility of repetitious litigation; and,

viii.      Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by single class action.

49.      Accordingly, this case should be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

## FIRST CAUSE OF ACTION

### VIOLATION OF THE ADA, TITLE III

### [42 U.S.C. §§ 12101 *et seq.*]

### (All Plaintiffs Against all Defendants)

50.      Plaintiffs restate each and every allegation set forth in the foregoing paragraphs of this Complaint with the same force and effect as if more fully set forth herein.

51.      At all times relevant to this action, Title III of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12181, *et seq.* was in full force and effect and applied to Defendant's conduct.

52.     At all times relevant to this action, the United States Department of Justice regulations implementing Title III of the ADA, 28 C.F.R. Part 36, were in full force and effect and applied to the Defendant's conduct.

53.     At all times relevant to this action, the Individual Plaintiffs have been substantially limited in the major life activities of hearing. Accordingly, they are considered individuals with a disability as defined under the ADA, 42 U.S.C. § 12102(2).

54.     Defendant operates its services that are places of public accommodation as defined under Title III of the ADA, 42 U.S.C. § 12181(7).

55.     Title III of the ADA prohibits discrimination on the basis of disability "in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodations." 42 U.S.C. § 12182(a).

56.     Pursuant to Title III of the ADA and its implementing regulations, a public accommodation cannot deny participation or offer unequal or separate benefits to individuals with disabilities. 42 U.S.C. § 12182(b)(1)(A); 28 C.F.R. §§ 36.202.

57.     Pursuant to Title III of the ADA and its implementing regulations it "shall be discriminatory to exclude or otherwise deny equal goods, services, facilities, privileges, advantages, accommodations, or other opportunities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association." 42 U.S.C. § 12182(b)(1)(E)

58.     Pursuant to Title III of the ADA and its implementing regulations, a public accommodation shall furnish appropriate auxiliary aids and services to ensure effective communication with individual with disabilities. 42 U.S.C. § 12182(b)(2)(A)(iii); 28 C.F.R. § 36.303(b)(1).

59.     Pursuant to Title III of the ADA and its implementing regulations, a public accommodation, in choosing the type of auxiliary aid or service to ensure effective communication, must consider the "method of communication used by the individual; the nature, length, and complexity of the communication involved; and the context in which the communication is taking place." 28 C.F.R. § 36.303(c)(1)(ii).

60.     Pursuant to Title III of the ADA and its implementing regulations, in order to be effective, the type of auxiliary aid or service provided by the public accommodations "must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability." 28 C.F.R. § 36.303(c)(1)(ii). To this end, the Ninth Circuit has explained, "assistive technology is not frozen in time: as technology advances, [ ] accommodations should advance as well." *Enyart v. Nat'l Conference of Bar Examiners, Inc.*, 630 F.3d 1153, 1163 (9th Cir. 2011).

61.     This auxiliary aid should not place an extra burden on the disabled individual in order to gain full use and enjoyment of the service. Requiring hearing-impaired individuals to pay a surcharge to equally use the same service available for free to those who can hear is not a reasonable accommodation.

62.     A public accommodation may not place a surcharge on a particular individual with a disability or any group of individuals with disabilities to cover the costs of measures, such as the provision of auxiliary aids or program accessibility, that are required to provide that individual or group with the nondiscriminatory treatment required by the Act or this part. 28 C.F.R. § 36.301(c).

63.     The ADA restricts public accommodations from "impos[ing] a surcharge on a particular individual with a disability or any group of individuals with disabilities to cover the costs of measures, such as the provision of auxiliary aids, barrier removal, alternatives to barrier removal, and reasonable modifications in

policies, practices, or procedures, that are required to provide that individual or group with the nondiscriminatory treatment required by the Act or this part." 28 C.F.R. § 36.301(c).

64.     Defendant discriminated against the Plaintiffs on the basis of their disability by charging a surcharge to access to full and equal enjoyment of the goods, services, facilities, privileges, advantages, and/or accommodations of its place of public accommodation, and equal opportunity to participate in and benefit from Defendant's services, in violation of the ADA.

65.     The surcharge, although through a third-party, has been contracted by Defendant, directly allowing and supporting the discrimination against hearing-impaired users of its service. The accommodation that the third-party purports to address cannot place a surcharge. Defendant has a duty to ensure that hearing-impaired individuals are not discriminated against by its service and charged extra to equally-use the service.

66.     Defendant further discriminated against the Plaintiffs by failing to ensure effective communication through the specific provision of accessible and effective auxiliary aids and services, without a surcharge.

67.     Defendant has violated Title III by, without limitation, failing to provide its service to those that are hearing impaired without the need to pay excessive surcharges that those who can hear are not required to pay.

68.     As set out above, absent injunctive relief there is a clear risk that Defendant's actions will recur with Plaintiffs and/or additional hearing-impaired persons.

69.     Plaintiffs are therefore entitled to injunctive relief, as well as an award of attorneys' fees, costs, and disbursements pursuant to the ADA, 42 U.S.C. § 12188(a)(1) and/or common law.

## SECOND CAUSE OF ACTION

## VIOLATION OF THE UNRUH CIVIL RIGHTS ACT

### [Cal. Civil Code § 51 *et seq.*]

### (Plaintiff Myers Against all Defendants)

70.     Plaintiff Myers restates each and every allegation set forth in the foregoing paragraphs of this Complaint with the same force and effect as if more fully set forth herein.

71.     The Unruh Civil Rights Act, California Civil Code section 51 provides that:

> All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, marital status, or sexual orientation are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

Cal. Civ. Code § 51(b).

72.     Defendant is a business establishment within the meaning of the Unruh Act. Defendant is the owner and operator of business establishments within the meaning of the Unruh Act.

73.     Defendant violated the Unruh Act by its acts and omissions, as set forth herein. Specifically, Zoom's service is a business establishment within the meaning of Civil Code § 51, *et seq*. Zoom generates hundreds of millions of dollars in revenue from the video chat platform which it markets in California and nationwide. Zoom's service is an accommodation, advantage, facility, privilege, and service provided by Zoom, which is inaccessible to deaf patrons without the payment of a surcharge. This inaccessibility denies deaf consumers full and equal access to the accommodations, advantages, facilities, privileges, and services that Defendant

makes available to the non-disabled public, in violation of the Unruh Civil Rights Act, California Civil Code § 51, *et seq*. These violations are ongoing.

74.    Defendant's actions constitute intentional discrimination against the class on the basis of a disability in violation of California Civil Code § 51, *et seq*. Defendant is aware of the surcharge of closed captioning for deaf persons yet has deliberately chosen to ignore it, and further, to encourage payment of the surcharge.

75.    Defendant is additionally violating California Civil Code § 51, in that the conduct alleged herein constitutes a violation of various provisions of the Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq*., as set forth above. California Civil Code § 51(f) provides that a violation of the right of any individual under the ADA shall also constitute a violation of the Unruh Civil Rights Act.

76.    The actions of Defendant were and are in violation of the Unruh Civil Rights Act, California Civil Code § 51, *et seq*., and therefore Plaintiff Myers is entitled to injunctive relief remedying the discrimination. Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiffs and members of the class will continue to suffer irreparable harm.

77.    Plaintiff Myers and the California class are further entitled to statutory minimum damages pursuant to California Civil Code § 52 for every individual violation; i.e., each time a legally deaf individual has had to pay the surcharge to access Zoom.

### THIRD CAUSE OF ACTION
### VIOLATION OF THE NEW YORK HUMAN RIGHTS LAWS, N.Y. EXEC. LAW § 296.
#### (Plaintiff Kane Against all Defendants)

78.    Plaintiffs incorporate the allegations in the preceding paragraphs, as if alleged herein.

79.     N.Y. Exec. Law § 290, provides that the policies' intent is to "assure that every individual within this state is afforded an equal opportunity to enjoy a full and productive life and that the failure to provide such equal opportunity, whether because of discrimination, prejudice, intolerance or inadequate education, training, housing or health care not only threatens the rights and proper privileges of its inhabitants but menaces the institutions and foundation of a free democratic state and threatens the peace, order, health, safety and general welfare of the state and its inhabitants." N.Y. Exec. Law § 290(3).

80.     At all times relevant to this action, Title III of the ADA, 42 U.S.C. §§ 12181, *et seq.*, was in full force and effect and applied to Defendant's conduct.

81.     Discrimination in a place of public accommodation is actionable under this section of the Human Rights Laws. *See* N.Y. Exec. Law 297(9).

82.     At all times relevant to this action, Plaintiffs have been substantially limited in the major life activities of hearing.

83.     Defendant owns, leases, and/or operates services, that is a place of public accommodation as defined under Title III of the ADA, 42 U.S.C. § 12181(7)(F), and N.Y. Exec. Law  § 292(9).

84.     Pursuant to N.Y. Exec. Law § 296, a public accommodation cannot deny participation or offer unequal or separate benefits to individuals with disabilities based upon their disability.

> It shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation . . . to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges. . . to any person on account of . . . disability. N.Y. Exec. Law § 296(2)(a).

85.     Pursuant to N.Y. Exec. Law § 296, a public accommodation must make reasonable accommodations, afford the same services, and remove architectural barriers where readily achievable. These standards ensure the non-discrimination against disabled individuals.

86.     Defendant discriminated against Plaintiffs on the basis of their disability by denying access to full and equal enjoyment of the goods, services, facilities, privileges, advantages, and/or accommodations of its places of public accommodation, and equal opportunity to participate in and benefit from Defendant's health care services, in violation of N.Y. Exec. Law § 296.

87.     As set out above, absent injunctive relief there is a clear risk that Defendant's actions will recur with Plaintiff and/or other hearing-impaired persons seeking Defendant's services.

88.     Plaintiff Kane and the New York sub-class are further entitled to compensatory and/or punitive pursuant to N.Y. Exec. Law § 296.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and the members of the Class, pray for:

a.     A Declaratory Judgment that at the commencement of this action Defendant was in violation of the specific requirements of Title III of the ADA and its relevant implementing regulations, in that Defendant took no action that was reasonably calculated to ensure that its service was fully accessible to, and independently usable by, individuals with hearing disabilities;

b.     A permanent injunction pursuant to 42 U.S.C. § 12188(a)(2), 28 C.F.R. § 36.504(a) and California Civil Code § 51 *et seq*., which directs Defendant to take all steps necessary to bring its service into full compliance with the requirements set forth in the ADA and its implementing regulations, so that its service is fully accessible to, and independently usable by individuals with hearing disabilities,

without the need for a surcharge. That also require Defendant to fully implement the following practices and policies:

> (i.) Assess a deaf disabled individual's disability to determine the appropriate auxiliary aids and services, and the timing, duration, and frequency with which they will be provided upon a hearing disabled individual's use of the service.

> (ii) Assess the need for auxiliary aids and services, and the timing, duration, and frequency with which they will be provided upon a deaf disabled individual's use of the service;

> (iii) Provide auxiliary aids and services to deaf disabled individuals to permit them to use the service independently, without a surcharge;

> and which further directs that the Court shall retain jurisdiction for a period to be determined to ensure that Defendant has adopted and is following an institutional policy that will in fact cause it to remain fully in compliance with the law—the specific injunctive relief requested by Plaintiffs are described more fully above.

c.      A permanent injunction enjoining Defendant from continuing its discriminatory conduct;

d.      An Order certifying the classes proposed by the Individual Plaintiffs, naming the Individual Plaintiffs as class representatives, and appointing their counsel as class counsel;

e.      On Behalf of the Individual Plaintiff Meyer and the Proposed California Class: payment of statutory damages, in accordance with California Civil Code §§ 52(a) and 54.3 to the California sub-class;

f.      On Behalf of the Individual Plaintiff Kane and the Proposed New York Class: payment of compensatory damages to the Individual Plaintiffs and the class, as allowed by statute;

g.      Payment of costs of suit;

h.      Payment of reasonable attorneys' fees, pursuant to 42 U.S.C. § 12205, 28 C.F.R. § 36.505, Cal. Civil Code § 52, and Civ. Proc. Code § 1021.5, including costs of monitoring Defendant's compliance with the judgment. *See Gniewkowski v. Lettuce Entertain You Enterprises, Inc.*, Case No. 2:16-cv-01898-AJS (W.D. Pa. Jan. 11, 2018) (ECF 191) ("Plaintiffs, as the prevailing party, may file a fee petition before the Court surrenders jurisdiction. Pursuant to *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 559 (1986), supplemented, 483 U.S. 711 (1987), the fee petition may include costs to monitor Defendant's compliance with the permanent injunction."); *see also Access Now, Inc. v. Lax World, LLC*, No. 1:17-cv-10976-DJC (D. Mass. Apr. 17, 2018) (ECF 11) (same);

i.      On Behalf of the Individual Plaintiffs and the Proposed Class: Award of prejudgment interest pursuant to California Civil Code § 3291;

j.      An Order retaining jurisdiction over this case until Defendant has complied with the Court's Orders; and,

k.      The provision of whatever other relief the Court deems just, equitable and appropriate.

## <u>JURY DEMAND</u>

Plaintiffs demand a trial by jury.

Dated:  Denver, CO
       December 17, 2020         Respectfully Submitted,

                        /s/ Scott A. Kamber
                        Scott A. Kamber
                        skamber@kamberlaw.com
                        KAMBERLAW, LLC
                        201 Milwaukee Street, Suite 200
                        Denver, CO 80206
                        Phone: (646) 964-9600

Benjamin J. Sweet, Esq.
*(Pro hac vice pending)*
ben@nshmlaw.com
**NYE, STIRLING, HALE &**
**MILLER, LLP**
1145 Bower Hill Drive, Ste 104
Pittsburgh, PA 15243
Telephone: 412-857-5350

Alison Bernal (*Pro hac vice pending*)
alison@nshmlaw.com
Margaret Parker (*Pro hac vice pending*)
meg@nshmlaw.com
**NYE, STIRLING, HALE &**
**MILLER, LLP**
33 W. Mission Street, Suite 201
Santa Barbara, CA 93101
Phone: (805) 963-2345

*Attorneys for Plaintiffs*